May it please the Court, Steve Sadie for the defendant, Kelly Ankeny. This case involves two cases, two issues of first impression. The search of whether the reach of Hudson extends to exclusion of the products of an unreasonable search and the statutory interpretation of the Armed Career Criminal Act in light of Supreme Court and en banc authority requiring the application of the constitutional avoidance doctrine and in light of the Sixth Amendment concerns about prior convictions. First, the search. In Hudson, officers executing a warrant for drugs and guns delayed three to five seconds after the knock, turned an unlocked knob, doorknob, and walked in. The state conceded error and the court calling this a premature entry and a preliminary misstep found that the exclusionary rule did not apply to constitutional matter. This case involves 44 officers, 33 of whom were in paramilitary regalia, shooting out the windows of the house, breaking in the door, throwing in a destructive device that burned Mr. Ankeny's face, chest, and arms. Before getting themselves into position, they drove military vehicles, ramming cars out of the way, and basically conducted a full-out attack on the house. There's three important distinctions between this case and a federal case involving the statute 3109. The Supreme Court and this Court have interpreted the statute to have an exclusionary rule component. The involvement of the federal constitutional right did not come into effect until the Wilson decision in 1995. So what we're dealing here with in a case where before the search, the federal prosecutor was involved, the federal case, the Bureau of the Backwood Firearms was involved, and that before, at that point, there's sufficient federal involvement that the 3109 is in effect. Under the Neal Supreme Court case, the construction of the statute is determinative and continues regardless of changes in circumstances. Under Clark v. Martinez, it means the same thing in all contexts. That provides a basis for suppression. Second, Michigan had no provision for a no-knock warrant. In Banks v. Richards, a clear line is drawn between the existence of exigency before arriving at the doorstep and afterwards. There is no indication of any exigency that arose at the time. All the facts are basically in the state's possession from over a month beforehand and could have been submitted to the magistrate in the course of asking for a no-knock warrant for the arrest. At pages 36 to 37 of 540 U.S. in Banks, the court sets up the dichotomy. When a warrant applicant gives reasonable ground to expect utility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate is acting within the constitution to issue a no-knock warrant. Mr. Kennedy, I assume that the opinion that we should follow is Justice Kennedy's opinion in Hudson. Justice Kennedy, yes. His opinion seems to center on the causal relationship between the unlawful conduct and the discovery of the evidence. And he says that it's not the violation of the knock and announce rule that led to the discovery of the evidence, but they were there and had a warrant and the evidence was discovered due to the execution of the warrant. Whether they entered unlawfully or not, he didn't consider the cause to be the cause of the discovery. Is this case different? Yes. I believe that, first of all, because there was not a no-knock warrant and such a warrant was available, that the absence of one makes this a warrantless entry and should follow the basic rules on warrantless entry. How is it different in terms of, you know, cause? Well, first of all, all of Hudson's involving the time before the opening of the door, there's no question that the opening of the door was lawful and authorized. Here we have the entry involved. It's basically, can a tank drive through the front door to execute a routine warrant without implicating the importance of an exclusionary rule? Well, the entry, the entry is authorized. Excuse me? Some kind of entry is authorized, right? If they had knocked and waited however many seconds, they would have found the exact same evidence. I think that's the thrust of the questions that have been posed to you so far and under both, I think it's Justice Scalia's view and Justice Kennedy's view that there's not a sufficient causal relationship between what happens before they get in and the fact that there is a warrant allowing the seizure of the very items that were seized. I don't think the rationale of Hudson extends beyond the failure to give the notice pre-entry. Once you have the tank through the front door, I believe that that causation, that is, the entry leads directly to the seizure of the weapons. There is a clear but-for relationship there, and I think that is why Justice Scalia segues into discussing the rationales, and once you get to the rationales, the rationales are entirely different. You tear down a house to get in to execute a warrant, and I think that Leon basically gives us a norm of the good faith exception to the exclusionary rule assumes that there is a lawful entry, and if there is not a lawful entry where we have a tank. Well, what do you mean by lawful entry? Doesn't that just mean that the entry is authorized by a warrant or by probable cause? I would say no. Isn't that all lawful entry means in this context? No, I do not think so. I think that what it means is Hudson should be limited to the situation where, and the rationale is all about how many seconds, how much of a gray area is this, and how much of a greater interest is there in the individual and whether those few seconds are correctly allocated. This is entirely different. We don't smash the house down and shoot out the window. Factually, it's different, but conceptually, the key to the Hudson opinions seems to be that even if the entry, the nature of the entry or the timing of the entry had been different, the result from the defendant's standpoint would have been the same because the same evidence would have been discovered inevitably under a perfectly peaceable, lengthy entry. I don't think the rationale was inevitable discovery because under NICS and the citations in Ramirez, two NICS require a parallel investigation. There was no parallel investigation. Well, I wasn't using it as a term of art, but really, that's the underlying thought process is even if everything had been done in the most gentle and genteel way, the same evidence would have been found no matter what. I guess I'm seeing Hudson as more limited to the seconds before they had entered because yes, they still would have done the same thing. They still would have turned the unlocked door and walked in as they were authorized to do. It's using the totality of the circumstances tested in Banks. The smashing under this circumstance is unreasonable. If it is an unreasonable entry, which is immediately with no attenuation connected to the seizure of the weapon, that that norm is covered under the exclusionary rule, and there's no reason for the exception that Hudson cuts out here. I realize that the sentencing issue is one that is also one of personal interest, and I think it's one that gives this court a unique opportunity to provide coherence and reasonableness in an area where the sentencing law is fairly chaotic. And the reason is, for whatever reason, advocates have failed and judges have not applied what the Supreme Court has told us about how to handle this situation, and that is the doctrine of constitutional avoidance. For some reason, everyone is going to battle frontally, saying courts, ignore Almonduras-Torres. I don't see where there is anything to avoid. Almonduras-Torres said that it is constitutional, so what is there to avoid? What the Supreme Court has said in both Gretchen v. Howard and in Shepard is that both the application and the extension of Almonduras-Torres implicates a serious constitutional question, even the application of it, so that in order to say that you have to avoid it. But nothing has ever overruled it. It is the only case that has an actual holding, as opposed to fretting and worrying, wondering if it was a good decision. But it's never been overruled. The only actual decision says this is constitutional. So what you're avoiding is making people who are uneasy uneasy, but there's no actual. I guess I just don't. The Supreme Court holding saying that you're directing that this continued validity, and parentheticals in Gretchen v. Howard, Justice O'Connor says the continued validity of Almonduras-Torres is brought into question by a friend. We need to avoid these serious constitutional questions about the direct application of Almonduras-Torres. It doesn't mean that if there's no choice but to face it, we'll face it and we'll follow Almonduras-Torres. But if, like in this case, you have a statute that does not say a word about how to plead it, it does not say a word about how it has to be proven and whether it's to a jury or not, then we have a gap that we can fill. And here is what we need to do is to follow the Supreme Court's instructions to avoid that question by construing the statute. And it's exactly what this Court did en banc in Buckland. There was certainly an argument that the statutory enhancements for drugs under the Drugs Act was plain, was just unconstitutional. And the Court said, no, we're not going to follow that route. We are going to construe this to avoid the constitutional questions about 56th Amendment rights. So instead, we are going to take a fresh look, based on this new Sixth Amendment litigation direction from the Supreme Court, and just like the ACC, the drug statutes do not say how to plead to prove the quantity. So we will construe, in that silence, to avoid the constitutional question by requiring it as a matter of statute. You know, but the Supreme Court also said that when they have a case that we think or may appear to be in conflict, that we are still to apply a case that seems dubious, and we're not to get rid of that case, that that's the only court that can. I agree with that 100 percent. We cited Whelan for that proposition. If I were here telling the Court that Almedara's Court is no longer a good law, you cannot follow it, you'd say, Agostini, you can't, we can't do that. That's the Supreme Court's job. That is not what I'm asking you, the Court, to do, and it's not what the Supreme Court is asking us to do. You're telling us not to apply it. You're not saying to overrule it. You're saying just don't apply it. No, I'm saying don't address the question. We don't need to address the question, because we have a statute that we use if in an open question, how is to plead it and prove it. So we can go to statutory construction, so we never have to say, is Almedara's Court a good law or not? Not our question. We're just saying, what does the statute say? The statute, we will follow Clark v. Martinez, says this is a rule of statutory construction, not a constitutional way, not a way of doing an end run around the decision. That's exactly what Justice Thomas' dissent in Clark v. Martinez said, that, oh, you're just trying to get to a constitutional decision by, and Justice Scalia says, no, no, no. That misunderstands what the doctrine of constitutional avoidance does. The doctrine of constitutional avoidance is not reaching the constitutional question, not reaching whether Almedara's Court is a still valid. And that, we are completely open to doing here. MS. GOTTLIEB Council, let me ask you a very specific question about one of the prior convictions, and that's the 1977 robbery conviction. If that is an adult felony conviction, are you arguing that it is not a qualifying crime, or is your argument solely based on the assertion that it's a juvenile adjudication?  LOGSDON No. It's based on the assertion that the juvenile adjudication or an act of juvenile delinquency, whether it's in adult or in juvenile court, is still not counted unless a firearm is involved. MS.  I need a more precise answer. If, let's say the person was 35 years old when they did it, is that conviction a qualifying crime, just as a theoretical matter, the particular kind of robbery that was done in 1977? LOGSDON Under a Taylor analysis, it would probably fall within the categorical. MS. GOTTLIEB Okay. So is your, it appears to me from the face of the documents that he was tried in adult court and convicted of a felony just like any other adult, even though he happened to be under the age of 18. What is your basis for asserting that it is a juvenile delinquency adjudication rather than a felony conviction? LOGSDON The statute doesn't say juvenile delinquency adjudication. It says an act of juvenile delinquency. An act of juvenile delinquency, by its plain and natural meaning, means that the person is under the age of 18 when they commit a crime. There's no question that he was under the age of 17 at the time the offense occurred. MS. GOTTLIEB Well, under Oregon law, it's not considered an act of juvenile delinquency unless it's been adjudicated in juvenile court and called an act of juvenile delinquency. So why isn't this just an ordinary conviction? LOGSDON The statute, I don't believe, depends on anything other than it being an individual under the age of 18 who commits an act that can be adjudicated as either adult or juvenile act. And I think there's good reason for it. Here we have a 46-year-old who's looking at almost 20 additional years of incarceration based on something that happened when he was 17. And it can still count, but it has to involve an actual firearm. Here it doesn't. And under those circumstances, I think Congress wrote the statute correctly to take into consideration that whether it's adjudicated in adult court or in juvenile court, that such a conviction should only count if there is a firearm involved. That's a perfectly sensible decision by Congress, and Congress is looking for a relatively uniform standard so that it wouldn't depend on what the practices or laws were in the individual state. It just says how old were you when it happened. Do you want to say three months or a little? Yes, thank you. Counsel? Yes, you may proceed. Well, I'm awaiting. No, don't await. I said you may proceed. I'm Richard Friedman with the Appellate Section of the Criminal Division.  First, if I may, I'd like to remove a red herring from the case that involves this 1977 conviction. It was an adult conviction, conviction in state court. 924E has a term of art if there is an act of juvenile delinquency. That is defined for federal law purposes in Section 5031, and I discussed this with counsel before the argument. 5031 says an act of juvenile delinquency is when you're adjudicated in federal court for an act that would violate federal law if committed by an adult. So the way this works in the statute, if you're adjudicated as a juvenile in state court, you don't even have a, quote, conviction, unquote. Therefore, it would never count. If you're adjudicated as an adult in state court, it counts. And it counts not because it involves a firearm, but because it's robbery. Firearm is irrelevant. If, however, you've been adjudicated as a juvenile delinquent in federal court for an act that involves a firearm, Congress said we're going to count that one, even though it's not, would not otherwise be a conviction. And you'll see under 924E they have a special definition that says if it's an act of juvenile delinquency that involves a firearm, it will be a, quote, conviction for purposes of the definition. So I think that deals with that issue, and that is precisely the ground on which the district court decided this issue, that this was an adult conviction in state court. He was sentenced more than a year, and he served more than a year. And then when he was let out, he had his probation revoked. Now I would like to address the Hudson issues, unless the court would like to address something else first. Hudson contains a clear holding that was joined by five members of the court, and that holding is that even if there is a Fourth Amendment violation, the exclusionary rule will not be applied unless that violation is a but-for cause of the seizure of the evidence pursuant to the valid warrant. That was joined by five members. Here it's quite clear that whatever happened inside the dwelling, no matter how violent the police and how aggressive the police were in securing the dwelling, it was not the but-for cause of seizure of the firearms. The firearms were seized pursuant to a valid warrant. There is no constitutional or federal statutory or even state statutory requirement that a warrant be specifically authorized for a no-knock entry. So even if the no-knock entry was unlawful and the district court held that it was justified by accident circumstances, even if it was unlawful, the warrant was still good, and that's the square holding in Hudson that you do not apply the exclusionary rule. The question of whether the no-knock statute applies in 3109 we think is something of a red herring because this was a State proceeding. There were no Federal agents involved. It wasn't a joint task force. It's merely being prosecuted in Federal court. Moreover, it's quite plain in the Supreme Court cases that apply the exclusionary rule under 3109. In the last footnote of Segura, for example, the Court makes clear that the reason they're applying the exclusionary rule is because the Constitution would require it and that any exceptions that the Constitution would allow would also be imported into 3109. It's just inconceivable that after the Supreme Court has ruled that the exclusionary rule does not apply to a constitutional violation, that the Court would apply it to a statutory violation that does not contain an exclusionary rule. This is not the wiretap statute, but simply incorporates the common law rule that you need to knock and announce. Does the Court have additional questions? Well, in other words, you're saying we should read Hudson to overrule. I think we have our own kind of Ninth Circuit cases about application of 3109 even to, you know, State churches on the basis of the common law. Well, you will find that this Court has an embanked decision. In the Romberg v. Camerlingo case, it's an embanked decision, and you'll find a 206 Fed period of 886. This Court discusses the basis on which you can apply the exclusionary rule. It discusses that you don't apply it to statutory violations unless the statute has its own exclusionary rule or unless it serves the purposes of enforcing the constitutional right. So we think it's clear that the precedence of this Court and of other courts and the Supreme Court that you would enforce an exclusionary rule under 3109 because it served to enforce the constitutional right may disappear in the face of this clearholding in Hudson that despite a Fourth Amendment violation, you do not apply the exclusionary rule. My colleague on the other side has insisted that this entry and the manner of entry was unreasonable. The district court didn't make any such finding. Even if it was, that just means there was a Fourth Amendment violation, not that the exclusionary rule would apply. But if the Court permit, I'd like to say a few words about the dangers that face the officer and the kinds of factors the district court would consider if it made a ruling on reasonableness. Prior to this entry, it wasn't just a case where there were firearms inside. They had reliable information from the woman who intimately knew the defendant that he carried firearms on him, he was using methamphetamine, he was being violent, and she feared that if police attempted to apprehend him, he would fire on them or flee. Well, the police entered without a warrant, excuse me, without knocking and announcing, with a warrant, and they found the defendant at 530 in the morning sitting in a chair with a firearm tucked in the cushion and another one nearby. If they had given him 15 or 20 seconds to get to that firearm, an officer might have been injured or, quite more likely, the defendant would be dead. Should they have given him two seconds or three seconds? Of course not. The circumstances after they got in validated the wisdom of their assessment that he did pose a danger and extant circumstances. Now, did the officers know where he'd be in the dwelling? Well, they had plenty of time to make that assessment, and the fact that they did not get a no-knock warrant, does that, you know, come into play here at all? No, it doesn't. There's no requirement under the Constitution, federal or state law, to get a no-knock warrant. If they had, we'd have an argument that they had a good-faith exceptions alliance on a state judge giving them a no-knock warrant regardless of the circumstances that actually existed as long as they had revealed what they knew to the court. But in the absence of the no-knock authorization from a magistrate, they can still rely on the Fourth Amendment doctrine that if they have extant circumstances and a valid warrant, which they do, they can enter without the knocking and announcing. Now, the police did more than enter without knocking and announcing. They threw in a stun grenade, and they rushed in to go upstairs. They fired rubber bullets to knock out the upstairs window. A factor the district court would have to consider to see whether that was reasonable is that they didn't know where the defendant would be in the dwelling. What if he was upstairs with the fire? The police wanted to surprise him with the same expediency if he was upstairs as if he was sitting in that chair in the living room. They used nonlethal force. Our understanding of the record is they decided against firing tear gas and entering up the floors. They fired upwards with rubber bullets, which is not going to endanger life, but it is going to cause a considerable disturbance that would distract the defendant if he's upstairs while the police rush up. They can't make a decision after they see where he is. They just know an individual is in the living room. They can't identify who it is in the darkness. They have a plan to secure the whole premises. So these are the kinds of factors the district court would consider if the issue of reasonableness were before the court. But as this case evolves, it doesn't matter whether there was a Fourth Amendment violation in the matter of entry. The exclusionary rule doesn't apply. Does the court have questions on the application of the Armed Career Criminal Act or other types of questions? Thank you. Thank you, Your Honor. I yield the time to the court. On the 1977 conviction, the argument that we just heard, of course, coming up for the first time here, is completely contrary to any rational rule of statutory construction. In Laocoon, Arthur Anderson, Chief Justice Frank Joseph, talked about using the ordinary natural meaning of words. Natural, juvenile, delinquency, good means, an act, the act, not the disposition. Going to 5031, first of all, the existence in a different statute of a different definition would say to us that, well, if we're using it as a special term that means this in 5031, we don't have a similar statement in the ACC. They mean two different things. And we know that's true because can you imagine if we've, well, if it is adjudicated for an act that violates federal law as just read to us by counsel, that means that a robbery with no federal nexus is not impredicate. So perhaps under the argument that we just heard, even under the government's position, that there's no federal nexus, not an act of juvenile delinquency within the meaning of the statute, is not in ACC anymore. Second, we should be listening to what Justice Kennedy says about the limitations of PUDSMA. Justice Kennedy says, today's decision determines only that in the specific context of the Knox and Agnowski requirement, a violation is not sufficiently related to the later discovery of evidence to justify suppression. It says nothing about the tank through the door. It says nothing about what happened in this case where you have a totally unreasonable entry and direct seizure of the evidence. Under those circumstances, none of the justices are not saying this is what the rule is. And as far as 3109 is concerned, once a statute has been construed by the Supreme Court as it was construed, 3109 has been interpreted to include an exclusionary rule the same way that in DeVitus and Martinez, the Supreme Court found that detention authorization included a six-month limit. Those types of constructions remain until Congress acts otherwise. Lastly, the government seeks to justify what occurred based on evidence that was found. Of course, the standard applies to what was known to the officers at the time. But more importantly, on page 20 of the opening brief, we quote from Senator Sam Ervin, who talked specifically about the Knox and Agnowski statute and pointed out that it was an opportunity to protect officers by providing notice. And we've heard nothing in this case about the extraordinary decision to massively attack the house when there is completely alternative to be done. Mr. Bailey is going in there. The landlord is going in there. He's leaving the premises. He could easily have not put that pregnant woman, the 18-year-old month child, and those innocent people in jeopardy. And that's why I said he was utterly unreasonable under those circumstances. Thank you. Thank you. Case, case, your argument will be considered. Final case, the morning for oral argument.
judges: Reinhardt, Tashima, Graber